MARCIA CODLING et al., Respondents, v. CHRISTINO PAGLIA, Respondent, and CHRYSLER CORPORATION, Appellant. (Action No. 1.)

CHRISTINO PAGLIA, Respondent, v. CHRYSLER CORPORATION, Appellant. (Action No. 2.)

Third Department, January 20, 1972.

---

*Maynard, O'Connor & Smith* (*Berman & Frost,* by *Sheila L. Birnbaum,* of counsel), for appellant.

*DeGraff, Foy, Conway & Holt-Harris* (*John T. DeGraff, Jr.,* of counsel), for Marcia Codling and another, respondents in Action No. 1.

*Harvey M. Lifset* (*Douglas P. Rutnik* of counsel), for Christino Paglia, respondent in Action No. 2.

*Bender, Hesson, Ford & Grogan* (*Neil Hesson, Jr.,* of counsel), for Christino Paglia, respondent in Action No. 1.

STALEY, JR., J. These are appeals by defendant, Chrysler Corporation (1) from a judgment of the Supreme Court in Action No. 1 in favor of plaintiffs Codling, entered November 4, 1970 in Albany County, upon a verdict rendered at Trial Term; and (2) from a judgment of the Supreme Court in Action No. 2 in favor of plaintiffs Paglia, entered November 6, 1970, in Albany County, upon a verdict rendered at Trial Term, and (3) from an order of the Supreme Court at Trial Term entered December 22, 1970, in Albany County, which granted a motion by defendant Paglia in Action No. 1 for summary judgment on his cross complaint, and (4) from the judgment entered thereon, and appeal by plaintiffs Codling in Action No. 1 from an order of the Supreme Court at Trial Term, entered January 20, 1971 in Albany County, which denied their motion to set aside that part of the verdict of the jury which found no cause of action based on negligence.

The basic facts herein are not in dispute. On August 2, 1967 defendant Paglia was proceeding in the southbound lane of Route 144 in the Town of Bethlehem, Albany County, driving a 1967 Chrysler automobile which he had purchased in the spring of that year. His speed was approximately 45 to 50 miles per hour. Since its purchase, Paglia had driven it approximately 4,000 miles, and shortly prior to August 2, 1967, it had been inspected by the dealer where it had been purchased. As defendant Paglia was proceeding along Route 144, he traveled along a curve to the left and, as he reached the point where the road straightened, his automobile crossed over into the north-bound lane, where his automobile collided headon with an automobile operated by plaintiff Frank Codling, and in which plaintiff Marcia Codling was a passenger. At the time the Paglia automobile crossed over into the northbound lane, the Codling automobile was about 75 yards away.

Prior to the opening of the trial, the Codlings stipulated that their action against Paglia be discontinued on the merits in consideration of the payment by Paglia of the sum of $50,000 each to Frank and Marcia Codling, and they reserved all rights to proceed against Chrysler. Paglia was then removed as a defendant in Action No. 1, but he remained in the trial for the purposes of pursuing his cross claim for recoupment against Chrysler in Action No. 1 and his damage claims against Chrysler in Action No. 2. The cross claim thereafter was severed from the original action for separate determination.

Defendant Paglia was unable to attend the trial since he was hospitalized for reasons unrelated to the accident. In his examination before trial, read into the record, he testified that when his automobile crossed over into the northbound lane, he attempted to steer to the right, but was unable to bring it right; that the power steering locked; that '' it went to the left and I tried to steer to the right and she wouldn't budge, she wouldn't give ''. The basic issue involved in the actions against Chrysler is whether or not the power steering pump in the Paglia automobile was defective. Expert witnesses called by the Codlings testified that they performed tests on the pump which determined that it was defective and how this defect related to the accident. Chrysler's experts contested the validity of these tests, and the defectiveness of the pump.

The jury rendered a verdict against Chrysler in favor of Frank Codling in the amount of $150,000, less the $50,000 Paglia settlement; a verdict against Chrysler in favor of Marcia Codling in the amount of $200,000, less the $50,000 Paglia settlement; a verdict against Chrysler in favor of Paglia in the amount of $15,000. In answer to written questions submitted to the jury by the court, the jury found that defendant Chrysler did not negligently manufacture and assemble the Paglia automobile with a defective power assist steering system, but that defendant Chrysler had breached its implied warranty of merchantability and fitness of the Paglia automobile. After the jury verdict, defendant Paglia moved for and obtained summary judgment to recover from Chrysler the $100,000 settlement that he had paid to the Codlings.

Chrysler's first contention on this appeal is that the Codlings, being nonusers of the 1967 Chrysler, cannot recover from Chrysler, the manufacturer, for breach of implied warranty of merchantability and fitness.

In *Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432), it was determined that a cause of action exists in favor of third-party strangers to the contract for breach of implied warranty.

The language of that case would appear, however, to limit its application to the persons whose use of the manufacturer's product is contemplated. Subsequently, there have been decisions which have refused to recognize that such a cause of action exists in favor of bystanders and strangers injured by the product who were not users thereof. (*Berzon* v. *Don Allen Motors*, 23 A D 2d 530.) In *Guarino* v. *Mine Safety Appliance Co.* (25 N Y 2d 460), the Court of Appeals, employing the "danger invites rescue" doctrine, determined that a cause of action existed for breach of implied warranty in favor of parties injured in rescuing a user of a defective product even though they themselves were not injured by the product.

The court stated (p. 465): "We conclude that a person who by his culpable act, whether it stems from negligence or breach of warranty, places another person in a position of imminent peril, may be held liable for any damages sustained by a rescuer in his attempt to aid the imperilled victim."

Where a manufacturer's product is of such a character that when used for the purposes for which it is made, it is likely to be a source of danger and injury to several people if not properly fashioned, the manufacturer, as well as vendor, is liable for breach of implied warranty to persons purchasing or using the product and to persons injured rescuing persons using the product. The law, having developed to the point where it is now clear that a breach of implied warranty involving a dangerous instrumentality is a tortious wrong, separate and distinct from a breach of the sales contract (*Goldberg* v. *Kollsman Instrument Corp., supra*), there would appear to be no logic or reason in denying a right to relief to persons injured by a defective dangerous instrumentality solely on the ground that they were not themselves a user of the instrument. The manufacturer of an automobile obviously is aware that such product will be operated on the highways in conjunction with the operation of other automobiles and that a defect in its manufacture might result in danger or injury to such other users of the highways. Manufacturers of articles which may be a source of danger to several people if not properly manufactured should not be immune from liability for breach of implied warranty, a tortious wrong, to persons injured by a defectively manufactured article, where the manufacturer could reasonably contemplate injury to such persons by reason of the defect.

This is the law in other jurisdictions. (See *Toombs* v. *Fort Pierce Gas Co.*, 208 So. 2d 615 [Fla.]; *Piercefield* v. *Remington Arms Co.*, 375 Mich. 85; *Caruth* v. *Mariani*, 11 Ariz. App. 188;

*Elmore* v. *American Motors Corp.*, 70 Cal. 2d 578; *Ford Motor Co.* v. *Cockrell*, 211 So. 2d 833 [Miss.]; Ann. 33 ALR 3d 415.)

In *Elmore* v. *American Motors* (*supra*) actions for personal injuries and wrongful death were brought by the occupants of another car which had collided with an automobile manufactured by defendant American Motors Corp., on the ground that the accident had been caused by a defect in the automobile manufactured by American Motors Corp. causing the driver of that automobile to lose control and drive into the path of the other car. The court determined that the defect could have caused the accident and that the defect could have existed at the time of sale. The California Supreme Court unanimously held that an action was available for personal injuries by a bystander against the manufacturer and stated as follows (p. 586): " It has been pointed out that an injury to a bystander ' is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. [A restriction on the recovery by bystanders] is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as part of the accident problem.' (2 Harper and James, The Law of Torts [1956], p. 1572, fn. 6.)

" If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders.

" An automobile with a defectively connected drive shaft constitutes a substantial hazard on the highway not only to the driver and passenger of the car but also to pedestrians and other drivers. The public policy which protects the driver and passenger of the car should also protect the bystander, and where a driver or passenger of another car is injured due to defects in the manufacture of an automobile and without any fault of their own, they may recover from the manufacturer of the defective automobile."

The logic of this reasoning should be applied in this case, and the Codlings should be allowed to recover from Chrysler on the theory of breach of implied warranty.

Appellant's next contention is that the jury's determination that it breached its implied warranty of merchantability and fitness was against the weight of the credible evidence. This contention is based upon the argument that plaintiffs have failed to establish that the automobile manufactured by Chrysler, and more specifically the power assist system therein, was defective or that the defect existed when the automobile left Chrysler's possession.

While the plaintiffs had the burden of proving that the product manufactured by appellant was defective and that the defect existed at the time it left appellant's possession the " existence of the causative defect is provable by circumstantial evidence. The precise defect need not be named and proved; it is sufficient if the cumulation of circumstances and inferences, which includes the pattern of the accident, supports the conclusion that there was a defect which caused the accident ". (*Hunter* v. *Ford Motor Co.*, 37 A D 2d 335, 337.) Here, the owner of the 1967 Chrysler testified that he had purchased it in the spring of 1967; that it had about 4,000 miles on the odometer; that it had been inspected by the dealer shortly before the accident; and that no repairs had been made to the power steering unit. Further, plaintiffs' experts testified that they performed tests to determine the defect in the power steering assist system and how the defect found therein, lack of hydraulic pressure, related to the occurrence of the accident. Although appellant's experts testified to different conclusions and contested the validity of the tests made by plaintiffs' experts, their contradictory testimony raised only issues of fact within the province of the jury to decide and we see no basis in the record for disturbing that determination.

Appellant's next contention is that the jury's finding that appellant's breach of implied warranty was the proximate cause of plaintiff's injuries was against the weight of credible evidence. In this regard appellant argues that it is well established, that where a defendant in an automobile collision case is proved to have crossed over onto the wrong side of the road, such evidence is prima facie negligence, and in support of this position they cite *Pfaffenbach* v. *White Plains Express Corp.* (17 N Y 2d 132). In that case, however, the Court of Appeals pointed out that there was no other explanation of the accident and indicated that where defendant provides another explanation for the accident an issue of fact is presented for the jury. On this record there

is sufficient evidence from which the jury could draw the inference that the sole proximate cause of the accident and the resulting injuries was a defective power steering assist system in the Paglia automobile.

Appellant's next contention is that it was error for the court to charge that contributory negligence was not a defense to a breach of warranty cause of action. In a breach of warranty action the plaintiff must prove that (1) he has been injured by the product; (2) that the injury occurred because the product was defective and that it was unfit for the purpose intended; and (3) the defect existed when the product left the hands of the manufacturer-defendant. (*Goldberg* v. *Kollsman Instrument Corp.,* 12 N Y 2d 432, *supra; Hunter* v. *Ford Motor Co.,* 37 A D 2d 335, *supra.*)

"While an action for breach of a statutorily implied warranty of fitness may involve, incidentally, some showing of negligence, the contract breached is not merely one to use due care, but is a separate (implied) contract of guaranty that the goods are fit for the purpose for which they are sold and bought. * * * Proof of negligence is unnecessary for recovery in such a suit [citations omitted] " (*Blessington* v. *McCrory Stores Corp.,* 305 N. Y. 140, 147; see, also, *Mendel* v. *Pittsburgh Plate. Glass Co.,* 25 N Y 2d 340). It would, therefore, appear that contributory negligence is not a defense to an action for breach of implied warranty.

Appellant next contends that the court erred in granting defendant Paglia's motion for summary judgment upon his cross claim against defendant Chrysler for the amounts he paid to the Codlings in settlement of their actions against him. The complaint establishes that the plaintiffs alleged that Paglia was negligent in operating his automobile or by driving the automobile knowing that it was unsafe by reason of a defective power steering unit. Therefore, Paglia was either guilty of negligence which was active, or he was not negligent in any respect. If his negligence was active, he may not claim over against Chrysler for breach of warranty, since he was the operator of the vehicle. (*Vander Veer* v. *Tyrrell,* 27 A D 2d 958; *Alfano* v. *Amchir,* 23 A D 2d 659; *Singleton* v. *Bishop,* 19 A D 2d 595.) If Paglia was not guilty of negligence, the payments made in settlement were made as a pure volunteer for which he cannot recover.

" The rule in the State of New York, is that a person entitled to indemnity, where he is liable to be mulcted in damages, may settle the claims and recover over against the indemnitor, subject to the proof (1) of liability and (2) as to the reasonableness of the amount of settlement. * * * The rule is familiar that

money voluntarily paid by one person for another may not be recovered back '' (*Colonial Motor Coach Corp.* v. *New York Cent. R. R. Co.,* 131 Misc. 891, 901). A defendant who voluntarily pays without waiting for judgment assumes the risk of being able to prove the actionable facts upon which his liability depends, as well as the reasonableness of the amount he pays when he seeks recovery by way of indemnity from the party ultimately determined to be liable. (*Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214.)

Either Paglia was actively negligent and not entitled to recover either in negligence or breach of warranty, or he was not negligent in any respect, and the amounts paid in settlement were made as a mere volunteer. The motion for summary judgment on the cross claim should be denied.

The final contention of the appellant Chrysler is that the jury's awards of $200,000 to Marcia Codling and of $150,000 to Frank Codling were grossly excessive and should be set aside. Marcia Codling's injuries consisted of a dislocation and comminuted fracture to the right side of the pelvis and dislocation of the femoral head; permanent injury to the 9th and 10th cranial nerves resulting in loss of gag reflex causing difficulty in swallowing and distortion of speech; fracture of the right wrist requiring bone graft; partial loss of motion, grip and use of right wrist; fracture and dislocation of left foot with resulting deformity and partial loss of use; laceration of upper left eyelid requiring upper and lower eyelids to be stitched together to protect cornea and other surgery; stillbirth of her child at 23 weeks, as well as multiple lacerations, contusions and bruises and other injuries.

Frank Codling's injuries were also severe, consisting of a fracture and dislocation of the right ankle with resulting loss of motion causing a permanent limp and recurrent pain by reason of permanent deterioration of cartilage at the ankle joint; fracture of the femur; multiple rib fractures and severe injuries to the left interior chest wall as a result of the rib fractures. Special damages amounted to $34,000 and were incurred by him with additional medical expenses anticipated in the future. Frank Codling was 36 years old at the time of the accident and his wife was 27 years old. In our opinion the verdicts were not excessive.

We have considered the other issues raised on appeal, and find them to be without merit.

The judgment in Action No. 1, entered November 4, 1970, should be affirmed, with costs. The judgment in Action No. 2, entered November 6, 1970, should be affirmed, with costs. The

judgment and order entered December 22, 1970 should be reversed, on the law and the facts, and the cross claim dismissed, with costs. The order in Action No. 1, entered January 20, 1971, should be affirmed, without costs.

HERLIHY, P. J., GREENBLOTT, SWEENEY and SIMONS, JJ., concur.

Judgment in Action No. 1, entered November 4, 1970, affirmed, with costs. Judgment in Action No. 2, entered November 6, 1970, affirmed, with costs. Judgment and order entered December 22, 1970 reversed, on the law and the facts, and cross claim dismissed, with costs. Order in Action No. 1, entered January 20, 1971, affirmed, without costs.