Mary Ann **BUTKOWSKI** as Administratrix of the Estate of Ronald F. Butkowski, Deceased, Plaintiff-Appellant,

v.

**GENERAL MOTORS CORPORATION,**
Defendant-Appellee.

No. 766, Docket 73–2515.

United States Court of Appeals,
Second Circuit.

Argued May 6, 1974.

Decided May 28, 1974.

Charles P. McCabe, Buffalo, N. Y., for plaintiff-appellant.

Alexander C. Cordes, Buffalo, N. Y. (Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y., on the brief), for defendant-appellee.

Before FEINBERG, MANSFIELD and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff's husband, Ronald F. Butkowski, was fatally injured in a single car accident in Norfolk, Virginia in 1967. Thereafter, in the United States District Court for the Western District of New York, plaintiff Mary Ann Butkowski sued the manufacturer of the car, defendant General Motors Corporation, for the wrongful death of her husband. The theory of the action was that the absence of an external grease fitting on the car's idler arm had caused the part to "seize up," resulting in a sudden and fatal loss of steering control. After the close of plaintiff's evidence at trial, Judge John T. Curtin took the case from the jury and dismissed the complaint for failure to establish that a defect in the idler arm caused the accident. Plaintiff appeals from that decision and from the judge's earlier ruling denying discovery concerning defendant's campaign to recall cars of the model involved in the accident.

■ We affirm the judgment of the district court. Plaintiff's motions for discovery relating to the recall campaign were not made until February and March 1973—after the parties had assured the magistrate that all pre-trial steps had been completed, after the case had been referred to the court for trial, and some three and a half years after the complaint was filed.[1] Moreover, the discovery sought concerned an entirely different defect from the one that plaintiff claimed caused the accident. The recall campaign was aimed at correction of a defect which could cause the idler arm to separate from the rest of the steering assembly; plaintiff never alleged that the idler arm separated, contending rather that it froze. On these facts, the district judge could reasonably conclude that the discovery motions were untimely and "irrelevant and immaterial to the issues in this case."[2]

■ Similarly, the judge did not commit error in dismissing the complaint. Plaintiff attempted to prove her theory of causation with the testimony of Myers, a passenger in the car at the time of the accident, and of Brehm, an auto mechanic proffered as an expert witness.[3] But Judge Curtin refused to permit Brehm to testify before the jury, ruling that he was not a qualified expert because he was unfamiliar with the particular type of lubrication system employed on the model of car involved in the accident. This ruling was a permissible exercise of the trial judge's broad discretion to determine the qualifications of witnesses. The most significant aspect of Myers's testimony was the attribution to plaintiff's husband of the excited utterance "I can't steer the car." This was insufficient standing alone to justify submission of the causation issue to the jury,[4] especially since the alleged-

---

1. Plaintiff first learned of the campaign when she received a recall letter in October 1967, three weeks before the accident.

2. Unpublished opinion at 7 (April 4, 1973). Indeed, in March 1971, plaintiff's counsel informed defendant it would ·be a waste of time for plaintiff to depose GM engineers, a principal object of the March 1973 discovery motion.

3. Plaintiff also called a GM engineer to the stand in an unsuccessful attempt to elicit an admission that the lubrication provisions for the idler arm of the car were defective.

4. Indeed, plaintiff's counsel appeared to agree with this conclusion at trial, offering to stipulate that the liability aspect of his case had been defeated for failure to establish causation after the judge refused to admit Brehm's testimony.

ly defective part was undamaged in the accident and remained available for an inspection (which was never made) while the car was driven another 1,500 miles. See Barker, Circumstantial Evidence in Strict Liability Cases, 38 Albany L.Rev. 11 (1973).[5] Appellant cites to us the Appellate Division decision in Codling v. Paglia, 38 A.D.2d 154, 327 N.Y.S.2d 978 (3d Dep't 1972), aff'd in relevant part, 32 N.Y.2d 330, 337, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973), which apparently was not called to the attention of the trial court. To be sure, Myers's version of events was very similar to testimony admitted to prove causation on behalf of the successful plaintiffs in *Codling*. However, the plaintiffs in *Codling* also introduced detailed expert testimony concerning a defect in the automobile's hydraulic pump system, see 38 A.D.2d 154, 327 N.Y.S.2d at 982, 984–985; *Barker*, supra, 38 Albany L. Rev. at 11–12, and we think that difference is crucial. Of course, had this diversity suit been brought in the New York courts, where distinguished authority suggests it belongs,[6] the issue would be authoritatively resolved under state law.[7] But—for the present, at least—we must decide it, and we surely cannot say that Judge Curtin was wrong in holding plaintiff's evidence insufficient to get to the jury.

We have considered all of plaintiff's arguments and, after reviewing the record, find them to be without merit.

Judgment affirmed.

---

5. We note that Myers's credibility was seriously undermined by his signed statement in 1970, which did not mention the excited utterance and suggested that the car skidded while rounding a curve on a wet road surface at too high a speed, although we do not rely on this.

6. Friendly, Federal Jurisdiction: A General View 139–52 (1973); ALI, Study of the Division of Jurisdiction Between State and Federal Courts 99–110 (1969). Plaintiff resides in the Western District of New York.

7. We put to one side the much discussed issue whether a state or federal test applies

to determine the sufficiency of the evidence here. See Boeing Co. v. Shipman, 411 F.2d 365, 368–370 (5th Cir. 1969) (en banc); 5A Moore's Federal Practice ¶ 50.06 at 2347–2350. Both parties argued this appeal on the apparent assumption that New York law was controlling and, as we have noted previously, the federal and New York standards for directing verdicts are quite similar. See Fortunato v. Ford Motor Co., 464 F.2d 962, 965 (2d Cir.), cert. denied, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972); O'Connor v. Pennsylvania R.R., 308 F.2d 911, 914–915 (2d Cir. 1962).