George A. CUNNINGHAM, Appellant,

v.

Jerome GANS, d/b/a Atlanta Engineering Company, et al., Appellees.

No. 50, Docket 73–1747.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1974.

Decided Dec. 2, 1974.

John R. Mitchell, Charleston, W. Va. (Paul Stone, and Di Trapano, Mitchell, Lawson & Field, Charleston, W. Va., on the brief), for appellant.

David D. Rothbart, Brooklyn, N.Y. (Abraham-Reingold, and Glabman, Rubenstein, Reingold & Rothbart, Brooklyn, N.Y., on the brief), for appellee Gans.

Irwin H. Haut, New York City (Sidney A. Schwartz, and Alexander, Ash, Schwartz & Cohen, New York City, on the brief), for appellees Kahn, Greenberg, Donald N. Boas, James M. Boas, and Central Iron Manufacturing Co., Inc.

Before LUMBARD, MOORE and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

George Cunningham appeals from a judgment of the Eastern District, dismissing his complaint and directing a verdict for defendants. He claims that rulings by the trial judge, refusing to admit certain pieces of evidence as business records, refusing to receive the testimony of two witnesses offered by Cunningham as experts, and refusing to allow Cunningham to examine certain witnesses as adverse witnesses, were erroneous and were unduly restrictive and that they prevented Cunningham from establishing his tort and contract claims against defendants. Since we are in basic agreement with plaintiff's position, we reverse and remand for new trial.

Cunningham was employed by M. K. Kellogg Co. (Kellogg) as a pipe-fitter on a construction project at Belle, West Vir-

ginia, where an ammonia plant was being built for E. I. duPont de Nemours Co. On September 1, 1966, Cunningham helped erect a ten-inch steel pipe that connected a furnace to a boiler line. The pipe was over forty feet long, weighed several thousand pounds, and was to be installed approximately thirty feet above the ground. In order to install the pipe it was necessary to use pipe hangers, which consisted in part of clamps that were fastened around the pipe. After Cunningham had completed the installation of one such clamp, the devices used temporarily to hold the pipe in place were released. Almost immediately thereafter the clamp that Cunningham had installed broke and the pipe fell downward. Cunningham was knocked from his perch and he was injured when he fell thirty feet to the ground.

Cunningham filed this diversity action in August 1968 against the principals of Atlanta Engineering Co. (Atlanta), the alleged seller of the clamp, and Central Iron Manufacturing Co. (Central), the alleged manufacturer of the clamp. In his complaint Cunningham claimed that the clamp that broke and caused his injury was negligently designed and manufactured and that the defendants breached an express warranty of fitness and an implied warranty of fitness and merchantability. After extensive pre-trial proceedings, the case came to trial in January 1973. At the trial it became apparent that Cunningham faced several very difficult hurdles that had to be surmounted if he was to affix liability on the defendants. The problems stemmed from the fact that the clamp that broke was no longer available and could not be introduced into evidence and the fact that there was uncontroverted evidence that the clamp intended for use in hanging the pipe in question could not be found on the morning of the installation, and that another, lighter clamp had been substituted. Thus, there was no direct evidence that the clamp that broke was manufactured or sold by defendants, while there was evidence to show that a lighter, less sturdy clamp than called for in the plans had been used.

In an attempt to overcome these problems Cunningham endeavored to show that Atlanta was the only firm that had contracted to supply Kellogg with clamps, that no clamps were bought in West Virginia, and that no clamps were manufactured at the job site. If Cunningham could establish these facts, he would have shown through circumstantial evidence that it was probable that the clamp that broke was made and sold by defendants. In order to overcome the problem caused by the substitution of a lighter clamp, Cunningham attempted to show that the clamp actually used, as described by the witnesses who saw it, would have held a pipe of the size involved here, if that clamp met defendants' warranted specifications.

In order to establish these contentions Cunningham offered several documents into evidence and called two witnesses as experts. After initially allowing some of the documents into evidence, the trial judge changed his mind and ruled that they were all inadmissible. In the case of one of plaintiff's experts, the judge ruled that he was not an expert. In the case of the other expert, the judge restricted the extent to which Cunningham was allowed to ask him hypothetical questions.

### Exhibit 22

■ Exhibit 22 was a material status report on the Belle construction project, compiled by employees of Kellogg, that listed all of the purchase orders for that project. The exhibit was crucial to plaintiff's case because it apparently established that all of the clamps ordered for the project were supplied by Atlanta. Cunningham established that Mr. Connell, the Kellogg employee who had accompanied the document to the trial, was familiar with the internal records of Kellogg, that Kellogg kept records concerning the materials ordered for a project in the ordinary course of its business, and that Exhibit 22 was that record for the Belle project. Defendants attacked Exhibit 22 as not falling under the business records exception to the

hearsay rule[1] because Connell did not personally take Exhibit 22 from the company files (his superior gave it to him), was not positive that he had seen Exhibit 22 before it was handed to him, and was not employed in the records or purchasing division of Kellogg. The judge initially ruled Exhibit 22 was admissible, but the following day he changed his mind and refused to allow it into evidence.

While matters such as these are usually left to the discretion of the trial judge, it appears that the judge in this case based his decision on what we feel was an erroneous reading of two cases: Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), and Hartzog v. United States, 217 F.2d 706 (4th Cir. 1954). This fact, together with our feeling that the evidentiary rulings in this case were unduly restrictive, requires us to reverse the judgment. In *Palmer*, the Supreme Court excluded from evidence a statement made by the engineer of a train to a railroad company official following a train accident because the statement was not made in the ordinary course of the railroad's business, which the Court said was railroading, not investigating accidents. In doing so, however, the Court noted that the business records exception "should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need." Palmer v. Hoffman, *supra*, 318 U.S. at 115, 63 S.Ct. at 481. In *Hartzog*, the Fourth Circuit refused to allow into evidence as business records the written summaries of business records prepared by a deceased government investigator in anticipation of litigation. Both of these decisions are based on a desire to exclude from the

business records exception to the hearsay rule statements made or prepared with an eye toward litigation. Neither of these cases even faintly suggests that Exhibit 22 was not admissible as a business record since it clearly was prepared in the course of Kellogg's business and not for litigation.

Our recent cases also call for the admission of the Exhibit. In United States v. Rosenstein, 474 F.2d 705 (1973), we held that it was not required that the witness introducing the records had personally kept the records. It was enough that "someone who is sufficiently familiar with the business practice [testifies] that [the] records were made as part of that practice." United States v. Rosenstein, *supra*, at 710. See also United States v. Dawson, 400 F.2d 194, 198 (2d Cir. 1968). Connell testified that he was familiar with Kellogg's procedures and that Exhibit 22 was made in accordance with those procedures. There was no reason to believe that the record was unreliable and it should have been admitted.

### Exhibit 23

Mr. Connell also produced a xerox copy of an isometric drawing that depicted the pipe that was being installed when the accident occurred. The drawing was an important element in Cunningham's case: he intended to use it to establish the weight of the pipe. It will be remembered that he had to establish that weight in order to show that the clamp that broke should have been able to support that weight. Connell testified that the xeroxed copy was a fair representation of the drawings that were used on the Belle project and that the

1. The business-records exception to the hearsay rule is statutorily established in 28 U.S.C. § 1732:

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made

in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. . . . "

copy had been made from the original which was in the files of Kellogg Co. The defendants' objections were similar to those raised against Exhibit 22. Once again, we feel, for the reasons discussed above, that Exhibit 23 should have been admitted.

### Exhibit 24

■ Exhibit 24 consisted of documents that tended to show that Kellogg had problems with several of the clamps purchased from Atlanta. One of the documents was a laboratory report that indicated that the wrong kind of steel was used in manufacturing the clamps. Another indicated that Atlanta replaced many of the clamps because of the problems that Kellogg had with them. Cunningham sought to use these documents to establish that the clamp that broke was defective. However, the judge ruled that these documents (which were all dated within two months of Cunningham's injury) were inadmissible because they did not pertain to the specific clamp that plaintiff claimed caused his injury. Since plaintiff established that all of the clamps supplied by Atlanta had been delivered prior to the date of the accident, it seems to us that these documents, which dealt with the clamps supplied by Atlanta, were relevant and should have been admitted. Of course, Cunningham still must establish that Atlanta *did* supply the clamp that broke. If the jury decides that Atlanta did supply the clamp in question, they should be able to consider evidence that showed that other clamps supplied by Atlanta were defective. As expressed by McCormick: "[T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence.*" C. McCormick, Evidence § 185, at 437 (1972). We think that Exhibit 24 easily meets this test and should have been admitted into evidence.

### John Young as an Expert Witness

■ Plaintiff attempted to have John Young give an expert opinion as to whether the clamp actually used should

have been able to support the pipe that was being installed. In order to qualify Young as an expert in the field of pipe-hanger construction, plaintiff showed that Young had been a pipefitter for 33 years, had designed dies for making pipe-hangers, had made many thousands of hangers over a period of 16 years, had spent 17 years working exclusively as a pipefitter, and had been a general foreman in charge of pipefitting at the Belle plant. Defendants objected that these qualifications were not enough to establish Young as an expert, largely because Mr. Young was not a metallurgist and because some of his experience in the field had taken place many years ago. We do not find these objections persuasive. Indeed, the latter objection only establishes that Young had been around a long time. Moreover, in light of Young's long practical experience in the field, we do not think that his lack of metallurgic training disqualifies him as an expert witness. While we normally allow a trial judge considerable freedom in deciding whether a witness qualifies as an expert, see, e. g., Butkowski v. General Motors Corp., 497 F.2d 1158, at 1159 (1974), we feel in this case that Young should have been allowed to testify as an expert. Young's extensive experience in this field certainly qualified him as a person who could aid the jury in the resolution of the question of how much weight the clamp actually used should have been able to support. See generally C. McCormick, Evidence § 13 (1972). Of course, the defendants are free to cross-examine Young to develop any shortcomings in his qualifications.

### Emanuel Silkiss as an Expert Witness

■ Cunningham called Emanuel Silkiss as an expert witness to establish that the clamp that broke should have been able to support the pipe. In his questioning of Silkiss plaintiff's attorney was greatly hindered by defense counsels' objections to the hypothetical questions he was posing. Although those questions sometimes covered over a page of printed transcript defense counsel always objected and claimed that plaintiff's attor-

ney had misstated a minor point. These objections were sustained by the trial judge, and as a result Cunningham was unable to elicit helpful testimony from Silkiss. We feel the trial court's rulings were unduly restrictive. On retrial a better trial procedure would be for Cunningham's attorney to ask shorter, less detailed hypothetical questions. Then defense counsel should attack the expert's testimony by showing his conclusions would be different if certain facts were also assumed or if certain assumed facts were changed rather than by voicing picky objections to complicated hypothetical questions. Such a procedure has been advocated by many authorities. See, e. g., Proposed Federal Rule of Evidence 705 and advisory committee's note; C. McCormick, Evidence § 16 (1972).

### Adverse Witnesses

■ Cunningham also claims that he should have been allowed to call, and then question as adverse witnesses, two persons who were formerly employed by Central. Since these two men were never directors, officers or managing agents of Central, the application of rule 43 which allows a party to call and treat certain individuals as adverse witnesses is unclear. See 9 C. Wright and A. Miller, Federal Practice & Procedure, § 2413, at 369–70 (1971). However, we need not determine that issue since Cunningham does not show how he was prejudiced by his inability to treat the witnesses as adverse. He only suggests that one witness testified differently at trial than he did at the time of his deposition. Since rule 32(a)(1) allows any party to impeach a witness who deviates from his deposition answers at trial, we do not see how Cunningham was prejudiced. Fed.R.Civ.P. 32(a)(1). See also United States v. Freeman, 302 F.2d 347 (2d Cir. 1962) (party may impeach own witness).

Because the trial judge's erroneous rulings on the admissibility of business records and the appropriateness of expert testimony were unduly restrictive, plaintiff was prevented from establishing his case. We think that the offered evidence should have been admitted, and that if it had been, plaintiff would have presented sufficient evidence to require submission of the case to a jury. Reversed and remanded for a new trial before a different judge.