OPINION OF THE COURT
Harold Baer, Jr., J.
Plaintiff moves, pursuant tó CPLR 4401, for a directed *519 verdict with respect to the impleader action, and, pursuant to CPLR 4404, to set aside the verdict and for the entry of a verdict in plaintiffs favor as a matter of law, or, in the alternative, for a new trial of the impleader action.[1]
Plaintiff, through defendant, an insurance broker, obtained a policy of liability insurance coverage from the Mount Vernon Insurance Company (Mount Vernon). The policy was bound on or about September 7, 1985 to cover a one-year period and continued through the end of February 1986, when it was canceled by plaintiff. In 1986, Mount Vernon sued plaintiff to recover almost $853,000 (after the deduction of $56,214 paid by plaintiff) for premiums due on the policy for six months. Plaintiff concluded that it had no defense to the Mount Vernon lawsuit and settled it by agreeing to pay Mount Vernon $210,000 pursuant to a stipulation entered into in September 1987. In this impleader action, plaintiff seeks indemnification from the defendant broker for the amount of the settlement, attorney’s fees in the Mount Vernon action, interest and costs. Plaintiff argues that its responsibility to Mount Vernon was caused entirely by defendant.
In the amended third-party complaint in this case, plaintiff alleged that defendant undertook to obtain certain coverage for plaintiff. Plaintiff claimed that defendant represented that it had obtained coverage comparable to earlier coverage; that the coverage actually obtained was considerably more costly than prior coverage and contained a certain exclusion (for floor-waxing activities); and that plaintiff relied upon and was misled by defendant’s intentionally false representation about the coverage. Plaintiff also charged defendant with negligence for having bound plaintiff to such coverage. After a trial, however, a jury concluded that defendant was not obligated to indemnify plaintiff.
*520 Plaintiff argues that it was error for the court to have submitted anything to the jury. Plaintiff contends that since the court took from the jury the two aspects of what came to be called the Codling test, there was nothing left for the jury to decide.
Though plaintiff has identified the standard with Codling v Paglia (38 AD2d 154 [3d Dept 1972], affd 32 NY2d 330 [1973]), in fact the standard long antedates that case. The Court of Appeals articulated the principles in Dunn v Uvalde Asphalt Paving Co. (175 NY 214 [1903]). There the court said (supra, at 218) that one who is liable because of the wrong of another may settle with the party suing him and proceed against the wrongdoer "but, in that event, [the innocent party] undoubtedly assumes the risk of being able to prove the actionable facts upon which his liability depends as well as the reasonableness of the amount which he pays.” (See also, e.g., Trojcak v Wrynn, 45 AD2d 770 [2d Dept 1974].) Plaintiff argues that it was required to show only that it was liable to Mount Vernon in the main action and that its settlement for $210,000 was reasonable.
I took "the liability aspect”, as I put it, away from the jury, "if in fact it was ever there at all”, and found that the plaintiff "has established liability”. I later indicated that I would not put the question of the reasonableness of the settlement to the jury.[2] Rather, I submitted to the jury the question of whether or not plaintiff had been damaged by the wrong allegedly done by defendant, leaving to myself the question of reasonableness. I do not believe, however, that the Codling test as plaintiff reads it is all that there is to this case. Put another way, plaintiff and this court differ in our understandings of what the court did in taking "the liability aspect” away from the jury.
In some cases, indemnity will follow as the night the day where, for instance, the settling plaintiff proves that he would have been liable in the main case. If the plaintiff seeking indemnity is a master whose liability in the main case would have been purely vicarious, his establishment that he would have been liable necessarily will prove that the agent is liable to him for negligence. All that will remain then is the reason *521 ableness issue. In this case, however, Trans World’s liability in the main action was contractual. In taking "the liability aspect” away from the jury, I was finding that indeed, as plaintiff claimed, it had had no defense to Mount Vernon’s demand for the unpaid premiums. In contrast with the master in the hypothetical, the fact that plaintiff owed these sums did not mean, though, that it necessarily owed them because of a wrong done by defendant. It was still essential for plaintiff to prove that its liability on the policy was not the result of a decision of its own that it now regretted, but of a wrong done to it by its agent, the broker. In other words, plaintiff needed to "establish actionable facts which impose liability upon the third-party defendant” (D’Arcangelo v Burnett, 78 Misc 2d 118, 121 [Sup Ct 1974]). I did not take this issue away from the jury; there were questions of fact that needed resolution— namely, whether plaintiff owed money on the policy to Mount Vernon because of the fraudulent conduct or negligence of the defendant. Notwithstanding the Codling couplet, I conclude that there was something that remained for submission to the jury.
Plaintiff also disagreed at trial with this court’s submission of these questions to the jury on the ground that defendant admitted its wrongful conduct. Accident’s counsel, says plaintiff, "admitted to the misconduct of his client” in his summation. I do not agree with the full reach of plaintiff’s argument. As I understand it, the position of defense counsel was that he did not agree with or condone the conduct of agents of defendant concerning the understatement of plaintiff’s payroll made to Mount Vernon. In his view, however, that fact alone did not constitute a basis for a finding of liability to plaintiff. Had that not been so, it is hard to see why counsel would have made such exertions in the defense of this case. Instead, the defendant’s position was that it could not be held liable for having defrauded plaintiff because officials of plaintiff had been aware of the understatement of the payroll and had at least accepted it. There were, therefore, questions for the jury on both the fraud and negligence theories, one of which plaintiff needed to establish in order to prove that its damages were the result of defendant’s wrong, thereby entitling plaintiff to indemnification.
Plaintiff also finds fault with the court’s charge in a number of respects. One of plaintiff’s major points is that defendant’s principal line of defense was incorrectly handled by the court. As noted, that defense was that plaintiff was precluded from *522 recovering because it had been aware of and had participated in the fraud of which it complained. Plaintiff has consistently argued that defendant could not present this line of defense because it had failed affirmatively to plead the defense— whether called fraud, connivance, condonation or the like — in its answer.
CPLR 3018 (b) requires that a party plead "all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading”, including fraud. CPLR 3016 provides that in a defense based on misrepresentation or fraud, the circumstances constituting the wrong shall be stated with particularity. Defendant Accident’s answer contained an affirmative defense that if the plaintiff was injured as claimed, such injury was caused "by reasons of the carelessness, negligence, want of care, culpable conduct and/or breach of contract on the party of the third-party plaintiff”. Defendant’s defense, in other words, consisted of the standard language used to support arguments of contributory negligence or assumption of the risk. This defense did not unequivocally include a claim of fraudulent conduct on the plaintiff’s part. On the face of the pleadings, then, plaintiff’s argument was not wholly unfounded.
Defendant’s position was that it was not required to present an affirmative defense. As defendant puts it on this motion, "there was nothing in the way of an affirmative defense relied upon by the Third Party Defendant”; rather, "the only defense urged by the Third Party Defendant was truth”. Defendant did not and does not now elaborate on this position, but, as I understand it now and during trial, it gives rise to the following argument. Plaintiff here based part of its case on a claim of misrepresentation. Plaintiff thus had the burden of proving that defendant made (1) a statement of material fact, (2) that was false, (3) was known by defendant to be false, and that (4) plaintiff justifiably relied upon said misunderstatement, (5) to its damage. (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119 [1969].) Since plaintiff had to prove justifiable reliance, defendant, by a denial, could put plaintiff to its proof on this score and could argue to the jury that plaintiff could not have justifiably relied because it was aware (or worse) of the misstatement. In other words, in view of the burden of proof in a misrepresentation case, a defendant is not obliged to plead fraud affirmatively in order to be able to argue that, in effect, plaintiff was in on the wrong. I note that *523 this argument only bears on part of plaintiffs case; insofar as plaintiff relied upon a claim of negligence by defendant, the problem of affirmative pleading of defendant’s line of defense is not obviated.
Consequently, I treated the words "culpable conduct” in defendant’s pleading as embracing knowing participation by plaintiff. "Culpable conduct” is often used in other senses by counsel in their pleadings. CPLR 3018 (b) refers to "culpable conduct claimed in diminution of damages as set forth in article fourteen-A”. Still, "culpable conduct” can be used more broadly. (Arbegast v Board of Educ., 65 NY2d 161 [1985] [culpable conduct may include intentional misconduct]; McCabe v Easter, 128 AD2d 257 [3d Dept 1987].) Further, to be certain the jury was clear and in response to plaintiff’s request, a supplemental charge was given that underscored that the defendant, unlike the usual case, had the burden and could only meet its burden by clear and convincing evidence. Defendant asserted that "[t]here is no allegation of fraud by the defendant” and that this was not the correct burden of proof; it was a lessor burden.[3]
In reflecting upon this past history free from the pressures and time constraints of the trial, I am not certain that this course was the correct one. I note that there may be something to the legal argument I have inferred from defendant’s statements. On the other hand, at least insofar as the negligence claim was concerned, it seems clear that defendant ought to have pleaded its defense affirmatively and, especially given the mandate of CPLR 3016 (b), in clearer words. Certainly there has not been much clarity on this matter in this case, which is what CPLR 3016 and 3018 aim at achieving.[4] I need not, however, definitely resolve these various interrelated issues in view of the following.
The jury answered the first interrogatory put to it by finding that plaintiff was not entitled to be indemnified due to *524 Accident’s fraud. It answered the second by concluding that its response to the first interrogatory would not have been different but for the element of damages. The jury answered the next question by finding that defendant had been negligent. In the fourth interrogatory it concluded that defendant’s negligence was not a proximate cause of plaintiff’s damages. I find the last two questions to be decisive of this motion.
In my charge I put the question to the jury whether defendant was negligent or whether plaintiff was aware of the alleged wrong. I told the jury:
"[T]he defendant denies that it was — that it negligently omitted a portion of the ratable payroll. Further in fact it was in the defendant’s view as you heard from the witness stand plaintiff’s idea to understate the payroll and you will recall that its understated payroll is very significant because in fact it is from the payroll that the premium is determined. As a result defendant contends that any damages suffered were by reason of plaintiff’s own actions. If you find the plaintiff has proven by a fair preponderance of the credible evidence that the defendant breached its duty to plaintiff and then you will answer yes to what would be question number * * * three and proceed to question number [four] * * *
"Conversely if you find that plaintiff has not sustained its burden or that the defendant has proved that it is plaintiff who is responsible for the injury alleged you will answer no to question number * * * three and then end your deliberations.”
I often break these into separate questions, followed by a question on apportionment of liability. In this case, however, it seemed to me that the facts and contentions presented alternatives — either plaintiff was aware of and approved of what defendant did, or defendant acted on its own and negligently. Defendant did not object to my charge, nor did it submit a different request to charge on this question. Defendant did not find fault with the verdict sheet on this score. Defendant does not now point to any problem with the charge or assert that the verdict sheet was defective in this regard. The jury’s conclusion that defendant was negligent thus means that defendant was negligent and plaintiff was not involved in any knowing wrong.
This brings me to the next question on the verdict sheet. The standard question on proximate cause was put to the jury, which concluded that defendant’s negligence was not a *525 proximate cause of the injury. Plaintiff does not, in its current motion, set forth an argument addressed specifically to this conclusion. Plaintiff does, however, maintain its previous position that the verdict sheet was improper and that the whole charge on the negligence problem was incorrect. Of particular relevance here, plaintiff argues that the evidence established as a matter of law that defendant was liable, caused the loss suffered by plaintiff in settling with Mount Vernon and is obligated to recompense plaintiff. This seems to me a sufficient basis, although unassisted in any meaningful way by vociferous counsel, to address what for me is the single meaningful error of the jury.
From the evidence at trial it is clear that no jury, by any rational process, could have found as this jury did on this question. (Aetna Cas. & Sur. Co. v Garrett, 37 AD2d 750 [3d Dept 1971].) There was no factual dispute and no question of credibility. Indeed, the question need not have been put to the jury. (Howard v Poseidon Pools, 72 NY2d 972 [1988].) If the defendant negligently bound plaintiff to the insurance in question, then that negligence without doubt was a proximate cause of the injury, the obligation to pay Mount Vernon. What may well have happened is the following. The question asked whether defendant’s negligence was "a proximate cause of plaintiff’s damages” (emphasis added). There was much contention at trial and in summation about whether or not plaintiff had truly been damaged by the insurance contract with Mount Vernon. Some jurors may have concluded that they were being asked to express a determination about the issue of damages. Proximate cause and damages, however, are separate concepts. For this reason, the verdict sheet contained a fifth question asking whether plaintiff incurred damages as a result of the negligence. The jury did not answer this question in view of the answer to question number four.
I conclude as a matter of law that the negligence of defendant was a proximate cause of plaintiff’s obligation to Mount Vernon. The jury having already found defendant negligent— a conclusion well supported by the evidence — I direct a verdict in favor of plaintiff on the issue of liability. Because of the jury’s findings, I shall order a new trial on the question of damages.
Plaintiff also claims that the court’s approach to the damages problem was improper. Since that question remains finally to be determined, I shall set forth my reasoning.
*526 Consistent with its analysis of its burden in an indemnity case, plaintiff contends that the court should not have put the issue of damages to the jury. According to plaintiff, under the Codling test, "damage is assumed if one who is required to pay a third party because of another’s wrong-doing pays that third party.”
The plaintiff’s argument may be a sound one in the common indemnity case. In the example mentioned earlier, a master who is forced to make a settlement because of the negligence of his servant necessarily suffers damages. If the master can show that he would have been held liable to the plaintiff in the main action and therefore properly settled that case, he will have established (assuming that the settlement was reasonable) his entitlement to recover from the servant the amount paid in settlement. In such a case, as in Dunn v Uvalde Asphalt Paving Co. (175 NY 214, supra), for example, the indemnitee will have received nothing for the settlement payment other than peace in the main action. In Dunn, there was no possible nonlitigation benefit received by the indemnitee when it paid sums in settlement of an action brought against it because of the negligence of its subcontractor since the settled action was based on negligence. In this case, however, as I tried, apparently without success, to make clear at trial, the main action was a suit on an insurance policy and Trans World, even though it received a policy with an unwanted exclusion and at an unacceptably high cost, still received something — a liability insurance policy that plaintiff needed in order to carry on its business. Citation to Codling (38 AD2d 154, supra) prior to trial, during trial and now did not dispose of the damage problem in this case.
Plaintiff argues that the court was "hoodwinked” because defense counsel inveigled the court into relying upon a case that was not good law in the State of its origin and that does not accurately reflect New York law. Plaintiff argues at some length the meaning of this case, Wal-Mart Stores v Crist (664 F Supp 1242 [WD Ark 1987]), and the significance of the ruling of the Court of Appeals in the case (855 F2d 1326 [8th Cir 1988]). It is not, however, necessary for me to discuss whether the Court of Appeals decision undermined the decision of the District Court insofar as it might be relevant here because my charge was not based upon this case. Plaintiff contends that my charge on damages does not accurately state New York law but cites no cases directly on point. Plaintiff’s argument is that, under Codling (supra), damages are inesca *527 pable. I put the damages question to the jury and charged the jury on the question on the basis of what seemed and seems to me the applicability of indemnity doctrine in New York to the facts of this case. Since the jury found that defendant was negligent in binding the policy with Mount Vernon on plaintiff's behalf, plaintiff might very well have been damaged. But damage was not certain. Plaintiff settled the case for $210,000, plus interest. For that it had received six months of necessary liability insurance. As part of the settlement, one of its objections to the policy, the exclusion for floor-waxing liability, was revoked. The question thus became whether, at this price, plaintiff had suffered some kind of damage as a result of the negligence, or whether it had obtained what it needed at or below prevailing market prices. Plaintiff did not introduce proof to show that the settlement price exceeded the price it would have had to pay another carrier for what it had received. Plaintiff did attempt to prove that because it settled the main case well after the period during which it received the coverage, it was disabled from contemporaneously passing on to its customers the cost of that coverage. This contention, however, was controverted. Defendant argued that the evidence showed that plaintiff had charged its customers at the time amounts in excess of the cost later paid by it. This presented a question of fact to be resolved by the trier of fact. Submission to the jury was therefore appropriate.
The new jury will have to resolve this issue. The jury shall also consider whether or not plaintiff would be entitled to recover the $40,000 in attorney’s fees it claims.

. Plaintiff complains that prior to the charge to the jury this court indicated that plaintiff would be afforded an opportunity to move for a directed verdict after the charge but then denied plaintiff that opportunity. Plaintiff misreads the court’s ruling. I did state that plaintiff would be given the opportunity to so move. At the end of the charge, counsel for plaintiff announced that he wished to make the motion so the record would be complete, at which point I responded, "Denied”. Counsel assumes that I was denying him the opportunity to make the motion. This reading is supported by the literal wording of the colloquy at that point. What I was doing, however, was jumping ahead and denying not the chance to make the motion, but the motion itself. I need not now treat plaintiff’s present motion under CPLR 4401 as though made nunc pro tunc, for it was made in all its fullness at the time. I am, however, reexamining my ruling on the merits of the motion in light of plaintiff’s presentation on this motion.

. The settlement clearly was reasonable in light of the large potential liability to Mount Vernon, the provision whereby Mount Vernon would defend against and cover claims based on floor-waxing liability, the fact that the potential liability might have seriously damaged plaintiff's financial health and other factors.

. As I noted at the time, defendant had had an opportunity to quarrel with plaintiffs request at the moment it was made, which was the appropriate time to do so. Instead, defendant waited until after the supplementary charge was given and the jury had retired, to object.

. One route around the pleading problem would be to state that, in view of past proceedings in the case, plaintiff could not have been surprised and prejudiced by defendant’s line of defense. (Rogoff v San Juan Racing Assn., 54 NY2d 883 [1981].) I am not certain, however, that on the facts here this would be a fair and justifiable disposition of the problem. It is significant that defendant makes no such argument.