**G.D. SEARLE & CO., Plaintiff,**

v.

**MEDICORE COMMUNICATIONS, INC. d/b/a Park Row Publishers, Carol Cooper and Judith Giusto, Defendants.**

No. 92 Civ. 0552 (DNE).

United States District Court, S.D. New York.

Feb. 13, 1994.

Golenbock, Eiseman, Assor & Bell, New York City (Richard S. Taffet, of counsel), for plaintiff.

Berger Steingut Tarnoff & Stern, New York City (Leonard S. Elman, Robert J. Smith, of counsel), for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiff G.D. Searle & Co. ("Searle") brings this action against defendants Medicore Communications, Inc. d/b/a Park Row Publishers ("Medicore"), Carol Cooper ("Cooper"), and Judith Giusto ("Giusto") for breach of contract, indemnification, fraud, tortious interference with contractual relations, and conversion in connection with a contract for services to be provided by Medicore. Searle alleges damages in the amount of $218,675.00.

Plaintiff has moved, pursuant to Federal Rule of Civil Procedure ("Rule") 56, for summary judgment on each of its five claims.

Defendants have filed a cross-motion for summary judgment on all claims, and for sanctions pursuant to Rule 11.

## I. BACKGROUND

The parties are in agreement as to many of the underlying facts of the instant controversy. The following summary of facts is undisputed except where noted.[1]

Plaintiff G.D. Searle & Co. is a multinational pharmaceutical corporation incorporated in Delaware, with its principal place of business in Illinois. Defendant Medicore Communications, Inc., a New York corporation, published medical periodicals and other materials, and organized medical symposia on behalf of its clients, which included pharmaceutical companies such as Searle. Medicore conducted its business under the name Park Row Publishers; the company is still in existence, but no longer operates. Defendant Carol Cooper is a resident of the State of New York who, at all times relevant to this matter, was the president of Medicore. Defendant Judith Giusto is a resident of the State of West Virginia who, at all relevant times, was the executive vice president of Medicore. As of April 1991, Cooper and Giusto were the sole shareholders of Medicore.

Searle contracted with Medicore to organize and manage a "symposium" ("Norpace symposium") designed to promote, as well as to educate the medical community regarding the uses of, Norpace CR, a drug developed by Searle for the treatment of arrhythmia. This symposium consisted of a series of eight medical education conferences to be held in various cities throughout the United States.

Searle sent Medicore a two-page letter agreement regarding the Norpace symposium ("letter agreement"), dated January 28, 1991, which was executed by Cooper on behalf of Medicore on February 5, 1991. The

1. The summary of the facts is derived from the parties' respective statements submitted pursuant to the Joint Rules for United States District Courts for the Southern and Eastern Districts of New York, Civil Rule 3(g). Rule 3(g) requires that a party moving for summary judgment provide a statement of the material facts as to which it contends there is no genuine issue to be tried.

Rule 3(g) further requires that the non-movant file a statement of the material facts as to which it contends there is a genuine issue to be tried, and provides that facts set forth in the movant's 3(g) statement that are uncontroverted by the non-movant's statement are deemed to be admitted.

letter agreement stated that its duration would extend from February 1 to December 31, 1991, and that either party might terminate the agreement at any time by providing the other party with thirty days written notice. According to this letter agreement, Medicore was to provide the "necessary services" for the Norpace symposium, in conformity with a proposal that was attached and incorporated by reference as "Exhibit A" to the agreement. The parties concur that the "necessary services" set forth in the agreement included arranging for the various conferences; developing, printing, and sending invitations and other meeting materials; arranging for faculty lecturers and attendees from the medical community; preparing slide presentations and other audio-visual aids as required; and confirming guest attendance and making all lodging, food, and related arrangements for those attending the conference.

The letter agreement provided further that (1) in consideration for Medicore's provision of these services, Searle would pay Medicore a management fee as specified in the agreement; (2) Searle would reimburse Medicore for all out-of-pocket expenses incurred by Medicore in connection with the conferences, up to a specified amount; (3) Medicore would bill all expenses to Searle at cost and without mark-up; (4) Medicore would submit itemized statements of services and expenses to Searle in order to obtain payment; (5) Medicore was permitted to contract with third parties[2] on behalf of Searle; and (6) Medicore would indemnify Searle against any claims for payment brought against Searle by third parties, provided that Searle had made the required payments to Medicore.

The parties agree that, in providing the "necessary services" set forth in the letter agreement, Medicore was authorized to contract with third party vendors for various services associated with the Norpace symposium. Furthermore, the parties agree that

Searle was not required to have any contact or dealings with third party vendors, and that Medicore was responsible for paying all third parties for their services.[3] Plaintiff asserts further, however, that payment of these third parties in consideration for their services was itself one of the "necessary services" provided for in the letter agreement such that Medicore's failure to pay third parties constituted a breach of Medicore's duties *to Searle,* and not merely a breach of Medicore's duties *to third parties* arising from Medicore's separate contracts with them. It is plaintiff's position that, regardless of Medicore's duties to third parties arising from Medicore's separate contracts with them, under the terms of the letter agreement Medicore owed a duty to Searle to pay third party vendors such that failure to do so rendered Medicore liable to Searle in addition to, and independent of, Medicore's liability to third parties.

Defendants deny that payment to third parties was a "necessary service," or that Medicore had any duty to Searle to pay third parties under the terms of the letter agreement. Defendants' position is that, although Medicore and not Searle was responsible for paying third party vendors hired in connection with the Norpace symposium, Medicore's failure to pay certain third party vendors did not render Medicore liable to Searle other than by way of the various provisions in the letter agreement regarding indemnification.

Two revisions to the letter agreement, dated February 6 and April 4, 1991, reflected cost changes for several of the conferences; save for these two revisions, which are not the subject of any dispute, the letter agreement remained unchanged during all relevant periods.

Payments by Searle to Medicore were to be made periodically, and were conditioned upon the submission of invoices by Medicore to Searle. Medicore submitted an initial in-

---

**2.** The terms "third party" and "third party vendor" are used interchangeably throughout this opinion to refer to the individuals and companies contracted by Medicore in connection with the Norpace symposium.

**3.** Searle avers that Medicore's duty to pay third party vendors arose once Searle had remitted payment to Medicore to cover bills submitted by those third parties. By contrast, Medicore argues that it was responsible for paying third party vendors regardless of when or whether Searle reimbursed it for its expenses.

voice to Searle for each conference, requesting payment in advance for certain expenses, or reimbursement for expenses Medicore had already incurred, as well as partial payment of Medicore's management fee. Periodically thereafter, additional invoices were submitted to Searle that reflected charges for expenses incurred and fees, and after the conferences were completed, a final reconciliation invoice was submitted to Searle for each conference.

The parties agree that Searle paid each and every invoice submitted to it by Medicore, although Medicore avers that none of these payments was received in a timely fashion. The payments made by Searle in connection with the Norpace symposium totalled $358,216.00. Of this amount, $110,500.00 represented payment by Searle of Medicore's management fee, and $247,716.00 represented full payment of the out-of-pocket expenses incurred by Medicore in connection with the Norpace symposium. Medicore, in turn, organized and managed the Norpace symposium, frequently relying on third party vendors such as printers, hotels, and travel agents to provide some of the "necessary services" for the various conferences. Plaintiff does not allege that Medicore's performance of its duties under the letter agreement was unsatisfactory in any respect other than its failure to pay certain third party vendors for their services.

During the first half of 1991, Medicore experienced "cash flow problems." The origins of Medicore's cash flow difficulties, and precisely when these difficulties first arose, is disputed by the parties. Plaintiff avers that defendants experienced cash flow problems at least as early as January 1991, but did not inform plaintiff of them until several months later. Defendants blame Medicore's cash flow problems on "the constant lateness of the payments by Searle, coupled with Searle's refusal to advance money to Medicore to cover preliminary expenses...." *Mem. of Law In Supp. of Defs.' Cross–Mot. for Summ. J.*, at 8. In a letter dated July 11, 1991, Cooper and Giusto informed Searle that Medicore would use payments made by Searle in connection with specifically identified invoices, along with existing funds, to pay the balance of outstanding bills from several third parties that had provided services in connection with the Norpace symposium. Although this letter stated that its purpose was to confirm earlier discussions between Medicore and Searle, the parties dispute the contents of these earlier discussions, and therefore disagree as to the precise meaning of the letter.

Specifically, the parties disagree as to what was said during a telephone call that took place on or shortly before July 11, 1991, between Giusto and Kim Cysewski ("Cysewski"), manager of Searle's U.S. marketing finance department. Plaintiff avers that during this telephone call, Giusto represented to Cysewski that all funds paid by Searle on outstanding invoices from Medicore would be used exclusively to satisfy Medicore's outstanding obligations to third-party vendors connected with the Norpace symposium. Defendants deny that Giusto made any such representation, and assert that Giusto merely stated that "every effort would be made" to pay the third party vendors, but that the payments received from Searle would be used to fulfill all outstanding obligations, not merely those obligations to third party vendors hired by Medicore in connection with the Norpace symposium. The parties agree, however, that regardless of what Giusto told Cysewski, it was Cooper's intent that Medicore would utilize all funds available to pay *all* of Medicore's creditors on a pro rata basis.

Despite the fact that Searle reimbursed Medicore fully for all expenses related to the Norpace symposium, Medicore failed to pay, and has never paid, outstanding bills from certain third party vendors totalling $108,175.42. Although Searle had already reimbursed Medicore for bills from the Crescent Court Hotel in Dallas, Texas, in the amount of $10,590.63, and the Regent Beverly Wilshire Hotel in Los Angeles, California, in the amount of $36,598.30, Searle subsequently made direct payments to each of these hotels for the amounts owed. The parties agree that although Searle has demanded the return of funds paid to Medicore, Medicore has not returned any funds paid by Searle to

Medicore in connection with the Norpace symposium.

The parties also agree that during June 1991, Medicore made payments personally to Cooper and Giusto in the aggregate amount of $7,076.38, and that subsequent to June 30, 1991, Medicore made payments to Cooper and Giusto in the aggregate amount of at least $35,000.00. Furthermore, after June 1, 1991, Medicore made payments of at least $20,747.92 in connection with automobiles driven by Cooper and Giusto, and paid $2,000.00 to a company of which Cooper's fiancé is a principal. Defendants aver that any payments made by Medicore to either Cooper or Giusto were made in payment of salary, compensation, and benefits to which Cooper and Giusto were rightfully entitled. The parties agree that all payments made by Medicore were at the direction of either Cooper, Giusto, or both.

Plaintiff filed this action alleging five specific claims. First, plaintiff alleges that Medicore breached the terms of the January 28, 1991 letter agreement by failing to pay certain third party vendors for services rendered. Second, plaintiff avers that Medicore is liable, under the indemnification provisions of the letter agreement, to Searle for $47,-188.93, which represents the total amount paid directly by Searle to the Crescent Court Hotel in Dallas and the Regent Beverly Wilshire Hotel in Los Angeles. Third, plaintiff claims that all defendants are liable for fraud. Fourth, plaintiff alleges that defendants Cooper and Giusto tortiously interfered with Medicore's performance of its duties under the contract. Fifth, plaintiff alleges that all defendants are liable for conversion.

Plaintiff has moved for summary judgment on all of its claims. Defendants have cross-moved for summary judgment on all claims and, in addition, urge this Court to impose Rule 11 sanctions against plaintiff on the ground that several of its claims are frivolous and were brought merely in order to harass defendants.

## II. DISCUSSION

Federal Rule of Civil Procedure ("Rule") 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property,* 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991). "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 107 (2d Cir.), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *see Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S.

at 250, 106 S.Ct. at 2511. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. "Conclusory allegation will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *Western*

*World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

### A. *Plaintiff's Breach of Contract Claim*

■ At the outset, I note that the essential facts underlying plaintiff's breach of contract claim are not in dispute. The parties agree that at some point prior to the end of January 1991, Searle negotiated with Medicore for the provision of services in connection with Searle's Norpace symposium. This symposium consisted primarily of a series of eight medical education and marketing conferences to be convened in various cities throughout the United States during 1991. The terms of the contract between Searle and Medicore are contained in a two-page letter agreement.[4] Under the terms of this

---

4. The January 28, 1991 letter agreement states in relevant part:

> This letter will confirm the agreement between G.D. Searle & Co. ("Searle") and Park Row Publishers ("Company" or "you") whereby Company agrees to provide the necessary services for the Norpace CR Regional Faculty Symposium during 1991, as set forth in Company's proposal attached as Exhibit A.
> In consideration for Company's services performed hereunder at our request, Searle will pay Company the fees stated in Exhibit A and reimburse Company for all out-of-pocket expenses incurred in connection with such conferences provided that the total payment hereunder shall not exceed four hundred forty-five thousand six hundred three dollars ($445,603.00) unless Searle has approved any overrun in advance in writing. All expenses shall be billed to Searle at cost and without markup. At Searle's request, claims for expenses shall be accompanied by supporting documentation such as receipts. To obtain payment Company must submit an itemized statement of services and expenses to Searle. Searle reserves the right to review any and all records and data of Company relating to its services or expenses hereunder, including, but not limited to, those records and data substantiating charges for said services and expenses.
> It is understood that Company may contract with third parties on behalf of Searle for the items identified in Exhibit A. Company shall indemnify Searle against claims for payment which such third parties may bring against

Searle, provided Searle has made the required payments to Company.
. . . .
In performing services hereunder, Company shall be responsible for the acts of its employees and the payment and/or deduction of all applicable taxes with respect to said employees. In no event shall Company or its employees be deemed to be employees of Searle. Except with respect to the contracts for services or materials described in Exhibit A, Company shall have no authority to bind Searle to any commitment whatsoever.
Searle will not be liable for any injuries or damages incurred by you or through your activities. You will indemnify and hold Searle harmless from any loss, claim or damage to persons or property arising out of this Agreement and the services rendered hereunder, which indemnification shall survive termination of this Agreement, provided that such loss, claim or damage was caused by your negligence. . . .
You are free to render services to others during the term of this Agreement, whether or not such services are performed in a consulting capacity, provided that such services do not create a conflict of interest in respect of your obligations and consulting duties under this Agreement.
This Agreement shall continue in effect from February 1, 1991 until December 31, 1991, except that Searle's right to review records and all rights and obligations concerning confidentiality and indemnification shall survive the expiration or termination of this agree-

contract, Medicore promised to provide the "necessary services" for the Norpace symposium, and Searle promised to pay Medicore a "management fee," and to reimburse Medicore for all out-of-pocket expenses incurred by Medicore in connection with the Norpace symposium, up to a certain maximum. The contract provided further that, in undertaking to organize and convene the various conferences held during the Norpace symposium, Medicore was entitled to "contract with third parties on behalf of Searle."

The sole issue of interpretation presented to this Court with regard to the terms of the letter agreement, then, is whether Medicore's duty to provide the "necessary services" for the Norpace symposium included a duty *to Searle* to pay such third party vendors for their services. If such a duty is found in Medicore's promise to provide "necessary services," as plaintiff urges, then failure to pay third party vendors would constitute a breach of Medicore's duties to Searle, apart from and in addition to any breach of Medicore's duties to third parties arising from separate contracts between Medicore and those third parties. Looked at another way, plaintiff claims that Medicore's failure to pay third parties constitutes an independent basis for Medicore's liability to Searle, separate and apart from any liability Medicore may have incurred to third parties.

Defendants argue that payment of third party vendors was not within the meaning of the term "necessary services," and that Medicore had no duty to Searle to pay third party vendors with which it contracted in connection with the Norpace symposium. Under defendants' theory of the contract, although Medicore was responsible for all direct dealings with third parties, including paying third parties for their services, failure to compensate a third party was not a failure to provide a "necessary service," and therefore did not mean that Medicore had failed to discharge its duties under its contract with Searle. Thus, while possibly rendering Medicore liable for breach of its contract with that third party, the failure to pay a third party did not

form an independent basis for liability to Searle.

Indeed, defendants aver that, notwithstanding Medicore's failure to compensate certain third party vendors for their services, Medicore fully performed all of its duties to Searle under the contract, and that the indemnification provisions of the letter agreement represented the only potential source of liability to Searle for failure to pay third parties. As such, defendants argue, plaintiff's sole remedy was to demand that Medicore indemnify it from third party claims.

Whether Medicore's failure to pay third party vendors was a breach of its contract with Searle depends on the nature of Medicore's duties under the terms of the letter agreement. As a threshold matter, then, this Court must determine whether the relationship between Searle and Medicore was that of principal and agent, employer and independent contractor, or something else. The letter agreement contains no express provision governing the duty to pay third parties. Nevertheless, the terms of the letter agreement demonstrate that Medicore acted as Searle's agent when it contracted with third party vendors.

 Agency is the relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 370 (S.D.N.Y.1985); *Boss v. International Bhd. of Boilermakers*, 567 F.Supp. 845, 847 n. 1 (N.D.N.Y.), *aff'd* 742 F.2d 1446 (2d Cir. 1983), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984); *see* 2 N.Y.Jur.2d, Agency and Independent Contractors § 1 (1979). One of the primary characteristics of agency is that the agent is placed in a position whereby he may affect or alter the legal relations between the principal and third persons; the agent may bind his principal to contractual liability. *See* 2 N.Y.Jur.2d, Agency and Independent Contractors § 2 (1979). By contrast, an independent contractor is one who contracts to do certain work

ment. Either party may terminate this Agreement at any time by giving the other party thirty (30) days written notice.

(Cooper Aff., at 392–93.)

according to his own methods, and without being subject to the control of his employer except as to the product or result of his work, *Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 142–43 (S.D.N.Y.1991); he contracts to perform a piece of work at his own risk and cost, his workmen being his servants and he being liable for their misconduct. *See* 3 N.Y.Jur.2d, Agency and Independent Contractors § 322 (1980).

▉ Under New York law,[5] when facts relied upon to establish the existence of an agency are undisputed, and conflicting inferences cannot be drawn therefrom, the question of the existence of the agency is one of law and should be determined by the court. *Plymouth Rock Fuel Corp. v. Leucadia, Inc.,* 100 A.D.2d 842, 474 N.Y.S.2d 79, 81 (1984) (citing *Hedeman v. Fairbanks, Morse & Co.,* 286 N.Y. 240, 248, 36 N.E.2d 129 (1941)); *see* 2 N.Y.Jur.2d, Agency and Independent Contractors § 28 (1979). In the case at bar, the facts relevant to the determination of the legal character of the relationship between Searle and Medicore are not in dispute. The parties agree that the January 28, 1991 letter agreement established the duties of each party, and that this agreement remained in effect without significant modification throughout the duration of the Norpace symposium. It is amply evident from the Court's review of this document that, as a matter of law, insofar as Medicore contracted with third party vendors on Searle's behalf, it did so as Searle's agent and not in the capacity of an independent contractor.[6]

The third paragraph of the letter agreement states that Medicore "may contract with third parties *on behalf of Searle* for the items identified in Exhibit A." *Supra,* at 12 n. 4. Rather than including the cost of these third party contracts as part of a lump sum price for its services, Medicore billed Searle directly for third party services, at cost and without mark-up, and was obligated upon request to provide supporting documentation such as receipts for such bills. The letter agreement goes on to state that Medicore "shall indemnify Searle against claims for payment which such third parties may bring against Searle, *provided Searle has made the required payments to [Medicore]." Supra,* at 12 n. 4 (emphasis added). Under this provision, Medicore was under no duty to indemnify Searle from third party claims for payment until such time as Searle provided Medicore with funds to pay such third parties. Perhaps the most telling language, however, appears in the sixth paragraph of the letter agreement, which states that "*Except with respect to the contracts for services or materials described in Exhibit A,* [Medicore] shall have no authority to bind Searle to any commitment whatsoever." *Supra,* at

---

**5.** The parties to this action have assumed that New York law applies to this case. In cases in which jurisdiction depends on diversity of citizenship, a federal court must follow the conflict of laws rules prevailing in the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991). New York utilizes an interest analysis approach to choice of law problems. *See Cargill,* 949 F.2d at 55; *William J. Conlon & Sons, Inc. v. Wanamaker,* 583 F.Supp. 212, 213 (E.D.N.Y.1984). Under New York conflicts principles, "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 824, 248 N.E.2d 576, 583 (1969) (citations omitted); *see J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.,* 37 N.Y.2d 220, 371 N.Y.S.2d 892, 898, 333 N.E.2d 168, 174 (1975); *Auten v. Auten,* 308 N.Y. 155, 161, 124 N.E.2d 99 (1954), *cert. denied,* 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975); *see also William J. Conlon & Sons,* 583 F.Supp. at 213. After considering the various interests at issue in this case, I find that the law of New York applies.

**6.** It should be noted that certain aspects of Medicore's relationship to Searle resemble aspects of the relationship between an independent contractor and an employer. Searle's hands-off approach to the manner in which Medicore chose to conduct the Norpace symposium, the partial lump sum payment scheme, and the independent nature of Medicore's business each represent classic indicia of an employer-independent contractor relationship. *See generally* 3 N.Y.Jur.2d, Agency §§ 324–341 (1980). Nevertheless, the letter agreement is quite specific with regard to the legal obligations between Searle and Medicore in relation to contracts with third parties, and the only determination relevant to plaintiff's breach of contract claim is the determination of whether Medicore acted as Searle's agent when it contracted with third parties.

12 n. 4 (emphasis added). Clearly, then, Medicore *did* have the authority to bind Searle to those contracts with third parties authorized in the third paragraph of the letter agreement.

Summarizing these provisions, Medicore was authorized to contract with third parties on behalf of Searle, to legally bind Searle to such contracts, and to bill Searle for reimbursement of the cost of such contracts. Medicore promised to indemnify Searle against third party claims for payment, but this duty only arose once Searle remitted funds to Medicore to cover the cost of third party contracts; if a third party brought a claim for payment against Searle directly, and Searle had failed to remit funds to Medicore to cover that third party's bill, Medicore was under no duty to indemnify Searle against the claim. It is evident from a review of the language of the letter agreement, then, that the parties intended Medicore to act as Searle's agent, and not as an independent contractor, when it contracted with third parties for the Norpace symposium.[7] While Medicore was authorized to initiate such contracts with third parties, and was responsible for discharging Searle's duty to pay third parties for their services, Searle was legally bound by such contracts and had no contractual right of indemnification from Medicore unless it had already reimbursed Medicore for the cost of such contracts.

I note that no evidence has been submitted to indicate that, with regard to contracts with third party vendors, the parties in practice viewed the relationship between Searle and Medicore as anything other than the principal-agent relationship defined by the letter agreement. In a letter to Searle dated December 17, 1990, defendant Giusto stated "I am sure you can understand how it is difficult for us to pay for a quantity of bills *on your behalf* with no cash in hand." (Cooper Aff., Ex. I (emphasis added).) In discussing payment of third party vendors during her deposition, defendant Cooper described how reimbursements from one company were occasionally used to pay for expenses incurred in connection with a project being performed for another company: "So sometimes you had to use A's money for B and it was standard practice because you are talking about a company [Medicore] that did not have mega cash reserves and most of the companies in the field are like that." (Taffet Reply Aff., Ex. 2, at 47.) Cooper's use of the term "A's money" in the context of managing third party bills merely confirms that Medicore viewed itself as Searle's agent in relation to third party vendors. Indeed, the language used throughout the deposition testimony in referring to the funds paid to Medicore to cover out-of-pocket expenses reflects the understanding of the parties that these funds were being paid specifically to reimburse Medicore for expenditure of funds on behalf of Searle. Hence, there is no material issue of fact regarding Medicore's status as Searle's agent in relation to third party contracts. Accordingly, I find that, as a matter of law, the relationship between Searle and Medicore defined by the terms of the letter agreement was that of principal and agent.

■ Having found that Medicore acted as Searle's agent in contracting with third party vendors in connection with the Norpace symposium, the Court now turns to plaintiff's argument that Medicore was under a duty to Searle to pay such third party vendors for their services, and that in light of Medicore's admitted failure to pay certain third parties, plaintiff is entitled to summary judgment on its breach of contract claim. Under New York law, a person who enters into a contract with another to perform services as an agent for him is subject to a duty to act in accordance with his promise, and the principal has a cause of action against the agent for violation of the agency contract. *American Express Co. v. Paonessa,* 57 A.D.2d 1079, 395 N.Y.S.2d 837, 839 (1977); *Ostrander v. Billie Holm's Village Travel, Inc.,* 87 Misc.2d 1049, 386 N.Y.S.2d 597 (Dist. Ct.1976); *see* 3 N.Y.Jur.2d, Agency and Independent Contractors § 190 (1980). Moreover, when the terms of an agreement are clear and unambiguous, a court will not look beyond the "four corners" of a document to determine what the parties meant. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 581

---

**7.** The Court need not address whether or not Medicore was also bound by such contracts.

F.Supp. 241, 243 (S.D.N.Y.1984), *aff'd,* 757 F.2d 523 (1985). When the language of an agreement is unambiguous and reasonable people could not differ on its meaning, a court may decide the proper interpretation of the language in the agreement. *American Home Assurance Co. v. Baltimore Gas & Elec. Co.,* 845 F.2d 48, 51 (2d Cir.1988).

■ I find that, under any reasonable interpretation of the letter agreement, payment of third party vendors for their services once Searle remitted funds to Medicore to cover such expenses constituted one of Medicore's duties to Searle as Searle's agent. Defendants' argument that the letter agreement included no express provision imposing upon Medicore the duty to pay third party vendors is without merit; an express provision is unnecessary to impose upon an agent so basic an obligation as the duty to pay the cost of third party contracts when the express purpose of the parties in creating the agency is to vest the agent with the authority to "contract with third parties on behalf of" the principal and the principal remits funds to the agent to cover the cost of such contracts. The very function of an agent in this context is to undertake to transact some business or manage some affairs for the principal; the agent is a substitute or deputy appointed by the principal, with power to do the things that the principal may or can do, and primarily to bring about business relations between the principal and third persons. *Facilities Dev. Corp. v. Oosterbaan,* 132 Misc.2d 923, 505 N.Y.S.2d 976, 978 (Sup. Ct.1986); *See* 2 N.Y.Jur.2d, Agency and Independent Contractors § 1 (1979). Defendants admit that payment of third party vendors was wholly Medicore's responsibility. Defendants argue, however, that this responsibility did not constitute a duty to Searle under the letter agreement. The proposition that so basic a "responsibility" was not also a "duty" is untenable in the context of a principal-agent relationship. Medicore's failure to pay third party vendors was, therefore, a breach of its contract with Searle.

Accordingly, plaintiff's motion for summary judgment on its claim against defendant Medicore for breach of contract is granted. Defendants' cross-motion for summary judgment on plaintiff's breach of contract claim is denied.

### 1. Damages

■ Plaintiff claims that it is entitled to recover damages for breach of contract totalling $218,675.00, which includes $108,175 paid to Medicore for reimbursement of out-of-pocket expenses for which Medicore never paid third parties, plus Medicore's $110,500 management fee. With regard to the funds paid by Searle to Medicore as reimbursement for third party expenses, defendants do not dispute that $108,175.42 represents the total amount paid to Medicore by Searle that was never paid to third parties. Furthermore, as Searle's agent, Medicore was under a duty to pay such third parties and failure to do so was a breach of its contract with Searle. Under New York law, "[i]t is well settled that if the plaintiff has made money payments to the defendant, and there is a failure of consideration whereby defendant materially breaches the contract, the plaintiff can maintain an action for restitution of the money so paid to the defendant, with interest." *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1141 (2d Cir.1987). As a matter of law, then, plaintiff has a valid claim against Medicore for restitution in the amount of $108,-175.42 plus interest.

■ While plaintiff contends that it is entitled to the entire management fee charged by Medicore for the Norpace Symposium, it has not alleged that Medicore failed to perform its duties under the letter agreement in any respect other than its failure to pay certain third party vendors. "Since the purpose of damages for breach of contract is to compensate the injured party for the loss caused by the breach, those damages are generally measured by plaintiff's actual loss." *United States Naval Inst. v. Charter Communications, Inc.,* 936 F.2d 692, 696 (2d Cir.1991) (citations omitted); *see also Wallace Steel, Inc. v. Ingersoll–Rand Co.,* 739 F.2d 112, 115 (2d Cir.1984) ("In fixing damages for breach of contract, the intent is to put the plaintiff in as good a position as he would have been in had defendant abided by his agreement, *i.e.,* to award plaintiff the value to him of the defendant's performance." (citations omitted)). The

task of remitting payment to these third parties was one of the services Medicore was under a duty to provide as Searle's agent. Presumably, this service was of some value, and it may therefore represent a certain portion of the management fee charged by Medicore for its services in connection with the Norpace symposium. In view of the many services provided by Medicore over the course of the Norpace symposium, however, plaintiff is not entitled to damages in the amount of the entire management fee; nevertheless, that portion of the management fee that represents payment for the services Medicore was to have provided in remitting payment to (as of yet unpaid) third party vendors must be determined by the trier of fact.

### B. Plaintiff's Indemnification Claim

■ The third paragraph of the letter agreement authorizes Medicore to contract with third party vendors, and provides that Medicore "shall indemnify Searle against claims for payment which such third parties may bring against Searle, provided Searle has made the required payments to [Medicore]." Plaintiff asserts that Medicore is obligated to indemnify Searle in the amount of $47,188.93, which represents the total amount paid directly by Searle to two third party vendors. It is not disputed that Medicore failed to pay these third party vendors for their services in connection with the Norpace symposium. Nevertheless, defendants argue that Medicore is under no obligation to indemnify Searle for the funds it paid to these third party vendors.

The parties do not dispute that Searle paid $10,590.63 directly to the Crescent Court Hotel in Dallas, Texas, and $36,598.00 to the Regent Beverly Wilshire Hotel in Los Angeles, California. Defendants seize upon the fact that neither hotel ever obtained a judgment against Searle for these or any other amounts, however, to argue that Medicore is not obligated to indemnify Searle for the amounts paid to these hotels. " 'The rule in the State of New York, is that a person entitled to indemnity where he is liable to be mulcted in damages, may settle the claims and recover over against the indemnitor, sub-ject to the proof (1) of liability and (2) as to the reasonableness of the amount of settlement.... The rule is familiar that money voluntarily paid by one person for another may not be recovered back.' " *Codling v. Paglia,* 38 A.D.2d 154, 327 N.Y.S.2d 978, 986 (App.Div.1972) (quoting *Colonial Motor Coach Corp. v. New York Cent. R.R. Co.,* 131 Misc. 891, 901, 228 N.Y.S. 508 (Sup.Ct.1928)), *aff'd in part and rev'd in part on other grounds,* 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973); *Parseghian v. Golden Plum Fruit Corp.,* 186 A.D.2d 546, 588 N.Y.S.2d 796, 796 (App.Div.1992); *Abrams v. Milwaukee Electric Tool Corp.,* 171 A.D.2d 930, 566 N.Y.S.2d 798, 799 (App.Div.1991). A party who voluntarily pays without waiting for judgment "assumes the risk of being able to prove the actionable facts upon which his liability depends, as well as the reasonableness of the amount he pays when he seeks recovery by way of indemnity from the party ultimately determined to be liable." *Id.* (citing *Dunn v. Uvalde Asphalt Paving Co.,* 175 N.Y. 214, 67 N.E. 439, 440 (1903)); *see Feuer v. Menkes Feuer, Inc.,* 8 A.D.2d 294, 187 N.Y.S.2d 116, 122 (1959).

In order to satisfy the first prong of the *Codling* test, then, plaintiff must prove that Searle was liable to the Crescent Court Hotel and the Regent Beverly Wilshire Hotel for the bills that remain unpaid by Medicore. It is a well-settled rule in New York that a principal is liable on contracts entered into on his behalf by his authorized agent. *Meade v. Finger Lakes–Seneca Coop. Ins. Co.,* 184 A.D.2d 952, 584 N.Y.S.2d 937 (1992); *Stanley Patch Lumber Corp. v. Barry,* 148 Misc. 376, 265 N.Y.S. 879, 880 (Co.Ct.1933); *see* 3 N.Y.Jur.2d, Agency and Independent Contractors § 247 (1980). Furthermore, a disclosed principal, otherwise liable on his agent's contract, is not relieved from liability by the fact alone of payment to his agent, even in good faith; in other words, he cannot thereby escape his obligation to the third party. *See* 3 N.Y.Jur.2d, Agency and Independent Contractors § 248 (1980). Defendants do not deny that Medicore contracted with both hotels on behalf of Searle. Because Medicore acted as Searle's agent when

it contracted with these hotels, *see supra*, at 903–907, Searle is liable on these contracts.

Furthermore, the undisputed record indicates that the amount paid by Searle to each hotel under respective settlement agreements matches the total of Medicore's unpaid bills from these hotels. Hence, plaintiff has, as a matter of law, satisfied the second prong of the *Codling* test. Under New York law, plaintiff is entitled to recover against Medicore under the indemnification provisions of the letter agreement.

As discussed above, once a moving party has carried its initial burden of demonstrating that it is entitled to summary judgment, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. Furthermore, conclusory allegation will not suffice to create a genuine issue. *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990). Aside from their unsubstantiated and conclusory allegation that Searle could have defeated claims for payment brought against it by third parties, defendants have presented no defenses to Searle's liability, and have, therefore, failed to allege facts sufficient to defeat plaintiff's motion for summary judgment on its claim for indemnification. Accordingly, plaintiff's motion for summary judgment on its claim for indemnification in the amount of $47,188.93 is granted.[8]

### C. Plaintiff's Fraud Claim

Plaintiff's third claim is that Medicore, and Cooper and Giusto individually, engaged in a continuing fraud regarding the use of funds paid by Searle to reimburse Medicore for out-of-pocket expenses incurred in connection with the Norpace symposium. Specifically, plaintiff alleges that defendants acted fraudulently by continuing to submit invoices to Searle for out-of-pocket expenses for which defendants had no intention of paying, and by falsely representing that all funds paid to Medicore subsequent to July 11, 1991, would be used exclusively to compensate third party vendors used in the Norpace symposium. Plaintiff also alleges that Medicore and its officers, Cooper and Giusto, fraudulently induced Searle to enter into an agreement with Medicore; plaintiff avers that Medicore was experiencing severe cash flow problems and had no intention of abiding by the terms of the contract.

It is well settled under New York law that a cause of action for fraud will not arise if the alleged fraud merely relates to the breach of a contract. *MBW Advertising Network, Inc. v. Century Business Credit Corp.*, 173 A.D.2d 306, 569 N.Y.S.2d 682, 682 (1991); *Harrington v. Murray*, 169 A.D.2d 580, 564 N.Y.S.2d 738, 740 (1991); *S & D Maintenance Co., Inc. v. City of New York*, 169 A.D.2d 417, 564 N.Y.S.2d 143, 144–45 (1991); *Naylor v. Ceag Elec. Corp.*, 158 A.D.2d 760, 551 N.Y.S.2d 349, 351 (1990); *Crabtree v. Tristar Automotive Group, Inc.*, 776 F.Supp. 155, 161 (S.D.N.Y.1991); *See generally* 60 N.Y.Jur.2d, Fraud and Deceit §§ 6, 19 (1987). In order to sustain a tort action separate from the breach of contract claim, the tortious conduct must have breached a legal duty existing independently of the contractual relations between the parties. *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir.1980).

In the case at bar, plaintiff has failed to allege conduct in breach of a legal duty existing independently of the contractual relations between the parties. *See Crabtree*, 776 F.Supp. at 162; *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F.Supp. 103, 105 (E.D.N.Y.1993). Breach of the duty to pay third party vendors used in the Norpace symposium does not constitute a breach of any legal duty existing indepen-

---

8. Since the Court ruled above that plaintiff is entitled to restitution in the amount of $108,175, representing the total out-of-pocket expenses reimbursed by Searle that Medicore failed to remit to third party vendors, granting summary judgment on plaintiff's claim for indemnification merely provides an alternate ground for Medicore's liability to the extent of $47,188.93.

dently of the contractual relations between Searle and Medicore, and therefore fails as a matter of law to support a claim for fraud. Furthermore, accepting as true plaintiff's allegation that during the telephone call between Giusto and Cysewski, Medicore deliberately misled Searle regarding its use of funds paid by Searle to cover out-of-pocket expenses, plaintiff still has not alleged conduct independent from Medicore's alleged breach of its agreement with Searle. Since plaintiff's factual allegations relate to defendants' duties under the contract, plaintiff's fraud claim is insufficient as a matter of law insofar as it relates to Medicore's failure to use funds paid to it by Searle to cover the cost of third party vendor services for that purpose.

 Plaintiff's complaint may also be understood, however, to bring a claim for fraudulent inducement of contract. Specifically, plaintiff argues that Medicore represented its willingness to perform its duties under its agreement with Searle when in fact it had no intention of fulfilling those duties, and thereby fraudulently induced Searle to enter into the agreement. In order to convert a contract claim into a tort claim for fraudulent inducement, the allegedly defrauded party must set forth specific facts from which a reasonable trier of fact could directly or indirectly infer that the promisor intended not to honor his obligations at the time the promise was made. *Drexel Burnham Lambert Inc. v. Saxony Heights Realty Assocs.*, 777 F.Supp. 228, 235 (S.D.N.Y.1991). New York courts have ruled that, in general, a representation that performance will be made, even if only implied through the negotiation process, is not distinct from the contract. *Metropolitan Transp. Auth. v. Triumph Advertising Prods., Inc.*, 116 A.D.2d 526, 497 N.Y.S.2d 673, 675 (1986). An exception to this general rule exists where the

promise made was a representation of present fact as opposed to an indication of future intent. *See Spellman v. Columbia Manicure Mfg. Co.*, 111 A.D.2d 320, 489 N.Y.S.2d 304, 307 (1985).

Plaintiff alleges that Medicore experienced cash flow problems and was insolvent at least as early as January 1991, and that as a result of Medicore's precarious financial position, it could not have intended to perform its duties under the contract. Thus, plaintiff has narrowly alleged conduct on the part of defendants sufficient to survive defendants' cross-motion for summary judgment on plaintiff's claim for fraudulent inducement of contract. Defendants have proffered evidence and testimony in support of their contention that Medicore entered into the contract with Searle in good faith and with every intention of fully discharging its duties. The issue of defendants' intent in the context of Medicore's financial condition at the time of formation of the contract with Searle is a material issue to be resolved by the trier of fact. *See David Tunick, Inc. v. Kornfeld*, 1993 WL 478357, *2, 1993 U.S. Dist. LEXIS 16160, at *6 (S.D.N.Y.1993). Accordingly, defendants' motion for summary judgment on plaintiff's claim for fraudulent inducement of contract is denied.

### D. Plaintiff's Tortious Interference With Contractual Relations Claim

 Plaintiff brings a claim against defendants Cooper and Giusto for tortious interference with contractual relations. Under New York law, to establish a claim for tortious interference with contractual relations, a plaintiff must establish: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the breach of that contract;[9] and (4) damages.

---

**9.** Plaintiff points to a line of cases that modify the third element of this tort, such that
[i]t is not necessary ... to allege a breach of contract in order to state a valid claim for interference with contractual relations. The tort extends to cases in which performance of the contract is rendered more difficult or a party's enjoyment of the contract's benefits is lessened by the wrongdoer's actions. In New York, "an unlawful interference with a person

in the performance of his contract with a third person is just as much a legal wrong as is an unlawful inducement of a breach of that contract by the third party."
*Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1332 (S.D.N.Y.1974) (footnote omitted) (quoting *Morris v. Blume*, 55 N.Y.S.2d 196, 199 (Sup.Ct.), *aff'd*, 269 A.D. 832, 56 N.Y.S.2d 414 (App.Div.1945)); *see also Maison Lazard Et Compagnie v. Manfra, Tordella & Brooks, Inc.*, 585

*Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993); *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 142 (2d Cir.1991); *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 75 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). The parties agree that there existed a valid contract between Searle and Medicore, and that Cooper and Giusto were fully aware of this contract. Medicore breached the contract, *see supra,* at 903–907, and plaintiff has alleged facts sufficient to proceed to trial on the issue of damages resulting from Medicore's failure to pay third party vendors.

Defendants argue, however, that even if plaintiff establishes the four elements of its prima facie claim for tortious interference with contractual relations, defendants Cooper and Giusto, as officers and directors of Medicore, are not personally liable to plaintiff for Medicore's breach of contract. In general, under New York law, an officer or director of a corporation " ' "is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." ' " *Courageous Syndicate, Inc. v. People–To–People Sports Comm., Inc.,* 141 A.D.2d 599, 529 N.Y.S.2d 520, 521 (1988) (quoting *Murtha v. Yonkers Child Care Assoc., Inc.,* 45 N.Y.2d 913, 411 N.Y.S.2d 219, 220, 383 N.E.2d 865, 866 (1978) (quoting *Brookside Mills, Inc. v. Raybrook Textile Corp.,* 276 A.D. 357, 367, 94 N.Y.S.2d 509 (App.Div. 1950))); *see Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 137–38 (N.D.N.Y.1990). Moreover, "a corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears

that he is acting in good faith as an officer and did not commit independent torts or predatory acts against another." *Gottehrer v. Viet–Hoa Co.,* 170 A.D.2d 648, 567 N.Y.S.2d 71, 72 (App.Div.1991); *see Murtha,* 411 N.Y.S.2d at 220, 383 N.E.2d at 866; *Feigen v. Advance Capital Management Corp.,* 150 A.D.2d 281, 541 N.Y.S.2d 797, 799 (1989).

■ In order to hold defendants personally liable, plaintiff must establish (1) that defendants' acts were taken outside the scope of their employment; or (2) that defendants personally profited from their acts. *Courageous Syndicate, Inc.,* 529 N.Y.S.2d at 521; *Citicorp Retail Servs., Inc. v. Wellington Mercantile Servs., Inc.,* 90 A.D.2d 532, 455 N.Y.S.2d 98, 99–100 (1982); *Heineman v. S & S Mach. Corp.,* 750 F.Supp. 1179, 1189 (E.D.N.Y.1990). Plaintiff alleges that Cooper and Giusto are personally liable on both grounds. First, plaintiff alleges that Cooper and Giusto are personally liable for inducing Medicore's breach of contract because they engaged in tortious conduct independent from their actions as corporate officers and directors. This argument is logically flawed. Plaintiff contends that Cooper and Giusto fraudulently induced Searle to enter the letter agreement and to continue making payments to Medicore under that agreement. Whether or not Cooper and Giusto acted fraudulently, however, such conduct is unrelated to Medicore's breach of contract. For Cooper's and Giusto's acts to result in liability for interference with contractual relations, there must be a cause and effect relationship between such acts and Medicore's failure to perform its duties under the letter agreement. Fraud and fraudulent inducement, even if such conduct were established, were not the cause of Medicore's failure to make payments to third parties. Hence, as a matter of simple logic, fraud or fraudulent in-

F.Supp. 1286, 1290 (S.D.N.Y.1984). In *J & J Sheet Metal Works, Inc. v. Picarazzi,* 793 F.Supp. 1104, 1114 (N.D.N.Y.1992), the court rejected this view, concluding that "[a]lthough the case law is somewhat muddled on this point, the New York Court of Appeals has clearly stated that 'for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other

party.'" (quoting *Jack L. Inselman & Co. v. FNB Fin. Co.,* 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 348, 364 N.E.2d 1119, 1120 (1977)); *see also Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F.Supp. 976, 995 (S.D.N.Y.1989). This division in the law is of no consequence in the case at bar, however, since the Court finds that, as a matter of law, Medicore was in breach of its contract with Searle.

ducement on the part of Cooper or Giusto could not have been the cause of Medicore's breach of contract.

Plaintiff also argues that Cooper and Giusto converted funds paid by Searle to Medicore and directed that these funds be used for improper purposes. As discussed below, however, plaintiff's claim for conversion is insufficient as a matter of law. Hence, plaintiff's argument that Cooper and Giusto are personally liable for Medicore's breach of contract as a result of acts outside the scope of their employment is without merit.

█ Plaintiff alleges, secondly, that Cooper and Giusto are personally liable for inducing Medicore's breach of contract because they both benefitted personally by directing payments to themselves or for their own personal benefit from funds paid by Searle to cover Medicore's out-of-pocket expenses for the Norpace symposium. Specifically, plaintiff alleges that the salary payments made to Cooper in Giusto were excessive, and that Cooper and Giusto directed certain other payments by Medicore that were improper.

█ Disbursement of corporate salaries and benefits falls within the function of a corporate officer, and does not render either Cooper or Giusto personally liable in tort. In order to establish the element of personal enrichment required to support a claim for tortious interference with contractual relations against Cooper or Giusto individually, plaintiff must prove that compensation clearly in excess of normal salary and benefits was paid out by Medicore under the direction of one or both of the individual defendants. Plaintiff's narrow claim that survives defendants' cross-motion for summary judgment, then, is based on the proposition that Cooper and Giusto abused their positions as officers and directors of Medicore to direct improper payments to themselves, and thereby prevented Medicore from discharging its duty to pay third party vendors for their services. Whether or not Cooper and Giusto improperly enriched themselves is a material issue of fact to be decided at trial. Accordingly, the parties' motions for summary judgment on plaintiff's claim for tortious interference with contractual relations are denied.

### E. Plaintiff's Conversion Claim

█ Plaintiff's fifth cause of action is for conversion, and is brought against all defendants. Under New York law, conversion is defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (1981); *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir.1987). Furthermore, it is well settled that an action will lie for the conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question, and such money can be described or identified in the same manner as a specific chattel. *Payne v. White*, 101 A.D.2d 975, 477 N.Y.S.2d 456, 458 (1984); *Kubin v. Miller*, 801 F.Supp. 1101, 1118 (S.D.N.Y.1992). Nevertheless, New York courts are clear that money can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be, and the mere failure to pay a debt is not a conversion of the money owing. *See Marine Midland Bank v. John E. Russo Produce Co.*, 65 A.D.2d 950, 410 N.Y.S.2d 730, 733 (App.Div.1978), *modified on other grounds*, 50 N.Y.2d 31, 427 N.Y.S.2d 961, 405 N.E.2d 205 (1980); *Columbia Marine Servs., Inc. v. Reffet Ltd.*, 861 F.2d 18, 23 (2d Cir. 1988); *Laurent v. Williamsburgh Sav. Bank*, 28 Misc.2d 140, 137 N.Y.S.2d 750, 754–55 (Sup.Ct.1954); *see generally* 23 N.Y.Jur.2d, Conversion §§ 5, 12 (1982).

There is no evidence that Medicore was under any obligation under the terms of the letter agreement to create a specific account for funds paid to it by Searle to cover out-of-pocket expenses. To the contrary, such funds were paid to Medicore to "reimburse" it for such expenses, and there is nothing in the letter agreement that creates a means of identifying specific funds. Plaintiff's argument that these funds were paid to Medicore for a specific purpose misses the point; regardless of the purpose of such payments, Medicore was under no obligation to remit particular, identifiable funds to third party vendors or to segregate these funds in a separate account, and in some instances paid

third party vendors *before* receiving reimbursement from Searle. Although plaintiff may be able to prove that defendants are liable in tort, as a matter of law it has failed to establish an essential element of its claim for conversion. Thus, defendants' motion for summary judgment on plaintiff's claim for conversion is granted with respect to all defendants.[10]

### F. Plaintiff's Punitive Damages Claim

■■■ Defendants have moved for summary judgment on plaintiff's demand for punitive damages. Defendants argue that plaintiff is not entitled to punitive damages on any of its claims. Under New York law, "punitive damages are appropriate in cases involving 'gross, wanton, or willful fraud or other morally culpable conduct.'" *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir.1991) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976) (mem.)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992). Punitive damages should not be assessed if the defendant cannot be charged with malice, wrongful motive, willful or intentional misdoing, or reckless indifference. *Krohn v. Agway Petroleum Corp.*, 168 A.D.2d 858, 564 N.Y.S.2d 797, 799 (App.Div.1990). Furthermore, punitive damages are not generally available in breach of contract claims. *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 (2d Cir.1986); *Thyssen. Inc. v. S.S. Fortune Star*, 777 F.2d 57, 63 (2d Cir.1985); *Parke–Hayden, Inc. v. Loews Theatre Management Corp.*, 789 F.Supp. 1257, 1267 (S.D.N.Y.1992). Punitive damages are recoverable, however, in actions based on tortious conduct that involves malice, oppression, wanton or reckless disregard of the plaintiff's rights, or other circumstances of aggravation. *See Grau v. Eljay Real Estate Corp.*, 162 A.D.2d 320, 556 N.Y.S.2d 898, 899 (1990). *See generally* 36 N.Y.Jur.2d, Damages § 176 (1984).

■■■ In the case at bar, plaintiff has brought claims for fraudulent inducement of contract and tortious interference with contractual relations, and has tendered facts sufficient to bring these claims to trial. Whether defendants have committed tortious acts characterized by malice and wantonness sufficient to merit an award of punitive damages is a matter for the trier of fact. *See Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 844 (2d Cir.1993) ("Under New York law, the imposition of punitive damages is left to the sound discretion of the finder of fact."). Accordingly, defendants' motion for summary judgment on plaintiff's demand for punitive damages is denied.

### G. Defendants' Motion for Rule 11 Sanctions

■■■ Defendants argue that they are entitled to Rule 11 sanctions on the ground that all of plaintiff's claims are without merit and were intended solely to harass defendants Cooper and Giusto. Rule 11 states that sanctions may be imposed when papers submitted to the court are not sufficiently "grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or if such papers are "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R.Civ.P. 11. Defendants' demand for sanctions is wholly without merit. The Court has ruled that plaintiff is entitled to summary judgment on several of its claims and is entitled to bring additional claims to trial. Since most of plaintiff's claims are sufficiently supported to survive defendants' cross-motion for summary judgment, there are no grounds upon which to award sanctions. *Cf. Rounseville v. Zahl*, 13 F.3d 625, 632–33 (2d Cir.1994) (all doubts are to be resolved in favor of the signor of the document that is the basis for Rule 11 sanctions). Accordingly, defendants' motion for Rule 11 sanctions is denied.

### CONCLUSION

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment on its

---

**10.** Since plaintiff has failed as a matter of law to establish the elements of its claim for conversion, the Court need not address defendants' argument that plaintiff's conversion claim merely restates its claim for breach of contract.

**914**

claims for breach of contract and indemnification is GRANTED.

IT IS FURTHER ORDERED that plaintiff is awarded restitution in the amount of $108,175.42, representing the total amount remitted by Searle to Medicore for reimbursement of out-of-pocket expenses that was never paid to third parties. Of this sum, plaintiff is awarded $47,188.93 on the alternate grounds of restitution and indemnification.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on its claim for damages in the amount of $110,500, which represents Medicore's management fee, is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on its claims for fraud, tortious interference with contractual relations, and conversion is DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's claims for fraud and conversion is GRANTED with respect to all defendants.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's claim for breach of contract, indemnification, fraudulent inducement of contract, tortious interference with contractual relations, and punitive damages is DENIED.

IT IS FURTHER ORDERED that defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 is DENIED.

IT IS FURTHER ORDERED that all discovery be completed within thirty days of the date of this Opinion and Order, and that the parties submit to this Court a Joint Pretrial Order within ten days thereafter.

SO ORDERED.